and Mr. Renner will go from you first. Thank you Judge Niemeyer. Richard Renner here from Raleigh, North Carolina. With us in the courtroom is Lisa Barnhill. And I want to start with page 14 of the Department of Justice brief where they make this statement. Barnhill attempts to recast the narrative, making herself the victim of discrimination and retaliation. I agree with that statement. And it is precisely when the two sides have different narratives about the same body of evidence that we have juries make the final decision. Barnhill's narrative explained how her black male supervisors, Dave Downing and Joseph Shepard, wanted her to be seen but not heard and excluded her from group supervisor meetings. After she filed her EEO complaint in September of 2015, the special agent in charge, Keith Brown, joined them in scorning Barnhill and subjecting her to hostile management review and an isolation and abandonment in a temporary duty assignment. This temporary duty assignment required Barnhill to use her government vehicle every Monday, drive eight hours from Little Rock, Arkansas down to the SAC headquarters in New Orleans, and then come to the office and perform no substantive duties on Tuesday, Wednesday, and Thursday staying at a hotel at government expense, and then on Friday driving eight hours the whole way back to Little Rock. Barnhill called it highway therapy. The supposed justification was to protect the management review had already been completed. Wasn't there also a complaint against her for hostile work environment and that's their explanation as to why they did the temporary duty assignment? If you're talking about Pamela Lee's complaint, that was filed after this TDY was put in place. It was put in place with the November 20, 2015. Well, not the EEO complaints, but complaints to, there were complaints to management and supervisors that from employees that she was harassed, of a hostile work environment that she was harassed. Well, there had been similar complaints like that before June of 2015 when the ASAC, the supervisor, Joseph Shepard, had initially announced to Barnhill that she would be placed on a management review, but at that time, Brown said no. He wasn't going to authorize it. He was going to try to work things out. But then after she filed the EEO complaint, this is when all hell broke loose. She got put on the TDY and the management review actually got underway without any memo to Barnhill explaining the reasons for it. To my knowledge, the record does not substantiate that between June and November there were any specific additional employee complaints. What there was was a declaration from ASAC Lemons, who was not Barnhill's immediate supervisor, but after the close of discovery in the district court, the Department of Justice put forward his declaration saying he asked Brown to commence the management review based on hearing some complaints from employees. Those complaints were not specified, and we don't know if they occurred before or after June when ASAC Shepard had asked for the management review. But what did change between June and November is that Barnhill filed her EEO complaint and Brown's attitude changed. In June, he said he was trying to work towards resolution. That's at page 835 of the joint appendix. But later, in October, he's aware that there are people going to be filing EEOs if they hadn't already filed them. That's at joint appendix 226. But doesn't she on October, I understand she files her EEO on September 22nd, but isn't this annual performance review done and the negative annual performance done like October the 12th before Brown gets notice from the EEO that she filed a complaint? Well, there are actually two performance reviews that ASAC Shepard had prepared, and we don't know, at least Brown and Shepard have not stated what is the date on which they learned about the EEO. But Brown does make very clear that normally the EEO office will notify him when there's an EEO proceeding commenced in his division. I thought that was November 6th, that's when he received the official written notice. That's when he received the official written notice. But when we asked him directly when he actually learned about it, his answer was, I don't remember. And he testified that normally he does get notified by the EEO office. And in this case, Barnhill specifically asked for alternative dispute resolution, which would involve the EEO office asking the supervisors, would you like to participate in ADR? And the EEO office did not record the date when they made that request to the supervision. But if you would compare... When did Lemons request the management review? I recall him saying October. I don't recall a specific date. And he requested that based on multiple complaints from employees, right? That's what his declaration says that we got after the closing. Is there anything to suggest otherwise as to him? Well, there is the testimony by Shepard that in this division, everything went through the SAC. Any personnel issues, they're always talking to the SAC. That's Keith Brown. And I think that supports an inference. SAC is the special agent in charge. SAC is the special agent in charge, yes. The leader of the division in New Orleans. Of the division? New Orleans Field Division. Who is that? Who is by name? Keith Brown. Well, I know, but I'm talking... My question to you is directed by Lemons. Brown said Lemons initiated the management review and Lemons said he initiated it because of the numerous complaints from employees about management style and the difficult work environment and so forth. And so they conducted that management review. My question is, what do you have to impute to Lemons? Anything other than those complaints? Well, we don't have to impute anything to Lemons because it is... I didn't ask you to argue the case. I asked you factually, what is there imputable to him? Well, he is a management official that serves under Brown. He would follow Brown's directions. Except Brown said the management review was initiated because of Lemons' request. It was Brown's decision. He owns it. I understand that, but the request came from Lemons and then Brown had to act on it or not. Yeah. This is really kind of a topsy-turvy version of Staub versus Proctor Hospital, right? You know, when I ask you a factual question, I'd like to get an answer about what's in the record, not an argument. You can argue the facts. Well, there is no direct evidence. Lemons does not admit to knowing about the EEO proceeding or wanting to reprise against it. But I think there are grounds to infer otherwise. And that's the issue here at summary judgment, is whether or not there's a basis for a jury to make an inference of animus. And to get back to Judge Benjamin's question... I think below your client, you made allegations that Lemons knew about the EEO complaint. We don't have direct evidence, but we did certainly argue that there is a basis to make an inference of reprisal against the employer. And that is our standard. It's hard to draw an inference when there's no direct evidence that he knew any of this and he was acting affirmatively on complaints received from numerous employees. And that's why they conducted the management review. And it had to be of a certain level of significance because they wanted to conduct it without her present in the department. And that's why they gave her the temporary duty down in New Orleans. I mean, in Louisiana. But it seems to me it's fairly significant, is it, that Lemons initiated that undisputedly based on complaints? Well, as to the legal significance, I think we can dispute that because... Well, whether you can, that's the question. Did you? We very much allege that it was Brown's decision and that he was affected by animus against the EEO complaint. And if you would compare the summary chart of the October 12, 2015 performance rating at Joint Appendix 669 with the October 27 version at Joint Appendix 457, you'll see a very stark contrast where Joseph Shepard goes from rating Barnhill's performance as exceeds expectations with outstanding ratings on four critical elements to rating that as substandard, rating her at or below expectations. And his deposition testimony says that he could not identify anything that happened between October 12 and October 27 that would justify such a stark change. The Department of Justice would have us believe that that October 12 performance appraisal was just a shell that he was working with. But that doesn't explain why he would submit it by email to the clerk at Joint Appendix 718 or why he would show the exceeds expectations rating of Barnhill at Joint Appendix 719. You know, from that stark change, downward change in her performance appraisal, there's more than adequate basis for a jury to infer that he did learn about the EEO sometime in that range and it caused this dramatic downturn in the performance appraisal, especially when the Department of Justice has no other explanation. I'm still struggling with how do you get around the official notice was sent to Brown on November the 6th. So, which would have been a week or two after the annual performance review. Well, the September 22 complaint was noticed to the agency about her EEO complaint. And on Monday, I filed a notice of supplemental authority about the Jones versus Bernanke decision from the D.C. Circuit that makes clear that causation can be inferred from the employer's knowledge and the subsequent adverse action. And if retaliation can be inferred, then so can knowledge. And especially where Brown and Shepard both deny remembering when exactly it was that they learned and Shepard admitting that if he got verbal notification from Brown about the EEO, there'd be no record of it. And Brown testified that he normally did get information when EEO complaints were filed. All that together would support an inference that they got verbal notification of the EEO complaint in October before the October 27 performance evaluation. But even without that, the way in which they treated Barnhill afterwards with the highway therapy and then Brown's decision to go up to Little Rock. Let me ask you about you. You refer to that pejoratively. I thought it was explained to her and she seemed to accept it that while they're conducting a management review of her department, that she shouldn't be present there for a lot of obvious reasons and that they wanted her at some other location temporarily while they conducted that investigation. Isn't that what was told to her? She received a written memo. It was not discussed with her and she did not accept it. She definitely made a complaint saying it was retaliatory. And the fact that the management review report was issued on January 12, 2016, and they maintained the highway therapy for six weeks after that, or maybe four weeks after that, a whole month, undercuts the claim that it was to protect the management review process. But you all don't, I believe below, you don't dispute that this is just a pretext. I didn't hear precisely what it is you're saying. Do you dispute that this was a pretext, this argument about moving her because of the other complaints that they received? I do recall that the Department of Justice claimed that we did not raise it below, but in fact we did. And in my reply brief, I cited the places in the record where we raised it in the court below. Let's see. In my rebuttal argument, I'll find that and get that to you. In addition to the summary judgment issue about the retaliation and the hostile work environment, we also have claims that were dismissed at the pleading level. In particular, her non-selection claims. Within weeks after filing the EEO complaint, Brown and Shepard submitted negative performance reviews of Barnhill. Those were submitted to the career board, a career board that includes officials who know about Barnhill's EEO complaint. And despite... Did you plead that below? We very much did. As to who was on the career board that knew about the EEO complaints? We definitely pled that the assistant director and the EEO director had knowledge. We also alleged that the special agents in charge had knowledge, and they are represented on the career board, even though the agency has not told us which specific SACs represented the SACs on the career board. That is information we would want to get in discovery. But we did allege that the career board members, including the assistant director, the EEO director, and the SACs, the special agents in charge, their representatives, all had knowledge of Barnhill's EEO complaint. And even if they didn't... And they were on the career board that made the decision? I couldn't hear you. And they were on the career board? Yes. Now, the EEO director was a non-voting member of the career board, but still a member and still had knowledge and could still share that knowledge with the other career board members. And SAC Brown told Barnhill that he told SAC James Schroba that Barnhill should not be given any promotion. That's in our amended complaint, and that is knowledge by another SAC. And these SACs, they rotated in and out of the career board. We don't know which of the SACs it was. Obviously, that's information we'd want to get on discovery. But the fact that she could not get promoted, but an employee who had never served the required time at headquarters was selected for the promotion in Seattle that Lisa Barnhill applied for. She met the qualifications for that position and was not selected. That's another deviation that would justify a finding of discrimination. I see you've got some rebuttal time. Yes, thank you, Your Honor. All right. Mr. Fuchs. Thank you, Your Honors. Your Honors, may it please the Court, Assistant United States Attorney, Uri S. Fuchs, on behalf of the Defendant Appeal. We're all the way across the room, so keep your voice up. Okay. Sorry, Your Honor. AUSA, Uri S. Fuchs, on behalf of Defendant Merrick B. Garland. Your Honors, in October of 2015, the DEA launched a management review of Plaintiff Lisa Barnhill and put her on a temporary detail following repeated and long-running complaints from plaintiff's subordinates that she was discriminating against them, subjecting them to unprofessional conduct, and otherwise creating a sexually and racially hostile work environment at the DEA's Little Rock, Arkansas office. The DEA's investigation and temporary detail represented a common-sense solution to investigate allegations of a hostile work environment and remove plaintiff from a fractious situation that she created with her subordinates. The wisdom of those measures was borne out by the results of that investigation and a later EEO proceeding that concluded... Is that when she started driving to New Orleans? Is that what... The temporary detail, yes, Your Honor. That's what he called the highway therapy. Where did that term come from? That term is plaintiff's acknowledgement that it's hearsay testimony that she heard from another individual whose testimony was not in the record and that he supposedly... That was a witness in some deposition referred to that. She referred to it in her deposition as highway therapy? Yeah, and when probed on where she actually got that term, plaintiff made clear that she heard it from another individual who heard it from Sac Brown. So it came from the plaintiff? Yes. The wisdom of the DA's measures was borne out by the results of the management review investigation and a later EEO proceeding concluded the plaintiff had indeed discriminated against the subordinate and created a hostile work environment. Even after this, the DA allowed plaintiff to continue working in Little Rock at a separate office once her temporary detail expired, where plaintiff continued to work until she voluntarily transferred to a separate DA office in 2016 and until she voluntarily retired from the DA in 2021. Disagreeing with the management review's conclusions and those of the separate EA proceeding in the court below, plaintiff attempted to refashion every work-based action she disagreed with from 2015 onwards as being the product of discrimination against her as a white female, retaliation for protected activity, and the product of a retaliatory hostile workplace. Plaintiff's attempt at revision did not succeed and for good reason. While plaintiff notes that there's a fissure here in whether or not she's recasted or not recasted, the point is not that plaintiff recasts the narrative, it's that the narrative does not support her claims on the pleadings or on the record evidence as a district court. What's your best argument for on October 12th, she heard draft annual performance review, I think it was excellent or excelled or whatever, and then on October the 27th, his argument is that someone must have found out that the EEO complaint was filed and then on the 27th of October, there was this negative annual, well, an employment review that it was changed. I take your point. A couple of points to that, Your Honor. So one, this court has made clear in Roberts and other cases that actual knowledge is the benchmark for showing causation or prima facie case of retaliation. As the district court correctly held, there was no record evidence of actual knowledge by A. Sack Lemons or Sack Brown, the individuals involved with the decision to initiate the management review. In Sack Brown's case until November 6, 2015, there is no record evidence that A. Sack Lemons knew of plaintiff's EEO complaint at the time. And as to that performance evaluation, Your Honor, that was instituted by A. Sack Shepherd. And as Judge Schrenga correctly noted below, there was no record evidence that A. Sack Shepherd somehow told Lemons or Brown at any point to confer actual knowledge upon them. And as to that performance evaluation, Your Honor, again, A. Sack Shepherd is actually not the decision maker here. As per this court's precedence in Holland, what you look to is the perception of the decision maker here, Lemons and Brown. But even taking the point that there was some sort of change in the performance evaluation, A. Sack Shepherd's deposition testimony, which was not controverted by plaintiff, actually explained that this October 12 document that they're pointing out is a shell. It doesn't have any rating comments. It doesn't have a signature. It doesn't have a date. And, in fact, the record evidence shows that long before October 12, 2015, A. Sack Shepherd was repeatedly critical of plaintiff's ability to lead her subordinates and had already started giving her negative evaluations for positions she was applying to well before her September 2015 EEO complaint. As the district court correctly concluded, Your Honors, plaintiff's narrative failed on the pleadings and then on the record evidence. As to plaintiff's discrimination claims, the district court correctly held the plaintiff failed to plausibly plead discriminatory animus by the relevant decision makers for any adverse actions. Now, the district court wrote multiple opinions in this case. Correct, Your Honor. Was there three? There are three, yes. So there is an initial dismissal order on plaintiff's first complaint. Plaintiff, in that dismissal order, Judge Trenga kicked out everything but the retaliatory hostile work environment claim and the retaliation claims based on the management review and the temporary detail. So he dismissed plaintiff's discrimination claims. He dismissed any claim that she had engaged in protected activity in June of 2015. And he dismissed any claims of retaliation unrelated otherwise to the management review or temporary detail. Following that, plaintiff replied her complaint to try to address those deficiencies. In a subsequent order issued by the court after discovery had closed, Judge Trenga dismissed those replied claims again. And as to the claims that he originally allowed to proceed discovery, he then issued a summary judgment decision on granting defendant's motion for summary judgment on the remaining retaliation claims and the retaliatory hostile work environment claim. That was the third opinion. Correct, Your Honor. Did you all ever have an oral argument during the course of those proceedings? We did, Your Honor. Before Judge Trenga. Before Judge Trenga, yes, Your Honor. He notes one point that the parties waved oral arguments. On the motion to dismiss, I believe. I don't remember what it was. Yeah, I'm struggling to remember, Your Honor. On the summary judgment. On the record here, you waved oral arguments. The district court made you come down here and you won. No, no, no, Your Honor. I would say it's always a plaintiff. Appellant always requests whether something requires oral arguments or not in this court. But I would note, Your Honor, that we actually did have a hearing below before the district court on the summary judgment motion, and I believe that's accepted towards the end of the joint appendix. So there was a hearing. Correct, Your Honor. As the plaintiff's retaliation claims, the district court correctly dismissed the plaintiff's claims in part at the threshold, noting the plaintiff had not pleaded any protected activity prior to September 2015. Many claims of her suspension and non-selection failed at the threshold because plaintiff did not plausibly plead that the decision makers for those actions, specifically the suspending official, Matthew Germanowski, or the career board had actual knowledge of her complaint. And to that point, Your Honor, I'd like to respond to my colleague's point where he said that he pled that the deputy administrator official and an EEO official knew of plaintiff's protected activity. We submit, Your Honor, that the district court found that what plaintiff had not alleged was that the majority, plausibly pled, that the majority of the career board actually knew about her complaint. The EEO official is not a voting member. As to the remainder of the sacks on the career board, Your Honors, plaintiff's allegation was upon information of belief, she speculated that the sacks talk amongst themselves and ergo would have talked about her EEO complaint. The district court correctly held that plaintiff had not plausibly pled knowledge by the decision makers based on an allegation. Plaintiff makes the argument that they actually didn't get the names of the sacks involved in the career board. Plaintiff got discovery on this. They got the meeting minutes of the career board meetings. And, in fact, the record evidence shows that plaintiff, in her own deposition, admitted that it was a purely speculative allegation on her part that sacks talked about her EEO complaint. She had no evidence in support of that. And one individual who was deposed in this case, William Glaspie, who was a sack and who had been on career boards, confirmed that he had never heard any kind of career board ever discuss an individual's EEO complaint. And the meeting minutes produced the plaintiff bear that out. Meanwhile, as to the remaining retaliation and retaliatory hostile work environment claims that proceeded to discovery, the district court correctly and ultimately granted summary judgment on those claims. As the district court correctly held, the record evidence did not demonstrate that the decision makers behind those actions had actual knowledge, as per this court's decision in Roberts, of plaintiff's protected activity. Plaintiff, in his argument, plaintiff's counsel in his argument, notes Sack Brown's testimony, I don't remember. The record evidence here shows, and the only record evidence of Sack Brown's knowledge of plaintiff's EEO complaint, is that he learned this in November 6th of 2015, well after Lemons had asked him to initiate a management review and Sack Brown began the steps to proceed with a management review. On summary judgment, it is plaintiff's burden, then, to cite to a contrary record evidence somehow disputing that Sack Brown did not know of plaintiff's protected activity on November 6th, 2015. That record evidence was not submitted in the court below, and it's not cited to here either, Your Honors. And the district court also noted, assuming arguendo, that the decision makers had actual knowledge, there were legitimate non-retaliatory reasons for plaintiff's management review in detail, namely that plaintiff's subordinates complained that it was untenable to keep working for her and that plaintiff needed to be kept away from the Little Rock office until plaintiff's supervisors could determine how to move forward following the conclusions of any management review. Plaintiff here attempts to argue that because the management review continued past the date stamped date in her management review findings, which is January 12th, 2016, that somehow that reflects retaliatory animus. Per this court's decision in Holland, and as the district court correctly held, to show pretext you have to show falsity in the stated reasons for a decision. Sack Brown, in implementing the TDY, put forth two reasons. One, to allow the management review time to finish, but two, to also allow himself time to think and ultimately conclude what to do as a result of the findings of the management review. Indeed, his deposition testimony excerpt in the joint appendix explicitly notes that even once the management review ended, it did not mean that plaintiff's TDY would come to an end. And as we pointed to in our briefing, Your Honors, and as noted in the record evidence below, that January 12th, 2016 memo appears to have been stamped based on the date of the draft. Sack Brown's testimony, an uncontroverted testimony, is that he had left the New Orleans division before that management review was ever concluded. So he actually ultimately did not see the findings while he was still with the SAC in New Orleans field office, and it is his testimony, as confirmed by a declaration from Daniel Comeau, the plaintiff did not move to strike in the court below, that the signature on that management review is not Keith Brown's, it's Daniel Comeau's, further emphasizing that even separate from the other basis that Sack Brown gave for the temporary detail, he did not ultimately learn of the findings of the management review while he was still the SAC of the New Orleans field office. On appeal, Your Honors, plaintiff asked this court to reverse and remand for a jury trial, overlooking the implausibility of her allegations and focusing on immaterial asides as the summary judgment. The plaintiff has no rejoinder to some crucial points in the district court's decisions below. Plaintiff has no rejoinder to the fact that she never pleaded any kind of plausible discriminatory animus by various decision-makers, namely suspending official Matthew Germanowski, Sack Brown, or the career board. The plaintiff has no rejoinder to the fact that she did not plead actual knowledge of her complaint by a majority of the career board or by suspending official Matthew Germanowski, and plaintiff does not dispute that her subordinate's complaints regarding her were longstanding and long predated any kind of protected activity. Plaintiff argues that it is somehow fishy that those complaints were not acted upon before, but Sack Brown well explained his reasons for doing so in his deposition of testimony excerpt in the joint appendix. As Sack Brown explained, he wanted to resolve the concerns of plaintiff's subordinates informally, but by October 2015, he was hearing from A. Sack Lemons that it was untenable to keep the plaintiff in her position as a diversion investigator in the Little Rock office. Your Honors, unless you have any further questions, I'd like to request that this court affirm the district court's holdings below granting defendants motions to dismiss and motion for summary judgment while rejecting the plaintiff's, plaintiff appellant's request for costs on appeal. Thank you, Mr. Cooper. Thank you. Mr. Renner. Thank you. Judge Benjamin, it's on page 25 of our reply brief where we cite to electronic case file docket number 56, pages 11 and 12, where we raise this issue in our opposition to summary judgment in the court below. Mr. Fuchs says that what happened to Lisa Barnhill was due to longstanding complaints from her subordinates, but we note that in June, of 2015, when Barnhill's own supervisor, Joseph Shepard, asked Keith Brown to authorize a management review, he refused. Keith Brown said at that time that he wanted to try to work things out. After she files the EEO complaint in September, then things change. And Brown specifically noted that he was aware that people were going to file EEO complaints. Was there a complaint filed against your client by an employee for sexual harassment or racial discrimination? Not sexual harassment, but yes for racial discrimination. And that was filed after... When was it filed? It was, I believe it was filed in 2016. It was after Keith Brown went up to Little Rock, while Lisa Barnhill had to be in New Orleans, and he specifically asked Barnhill's subordinates to file EEO complaints against her. It was Brown's initiative. I mean, apparently that's in response to their serious complaints, and he says basically file a complaint. In other words, when you come up to somebody and say she's been doing this, she's been doing that, but my question is when was she found... Well, they used the management review report to make... My question is she was found to have discriminated with, didn't she? The Department of Justice did make that final agency decision, yes, relying on the management review. Well, doesn't that confirm the earlier complaints that all these employees were making were legitimate? Lisa Barnhill has a right to go to trial. I understand, but I'd ask you a different question. I didn't ask you to argue. You keep anticipating where I'm going. I'd like to know what the record shows in this, and apparently these complaints have been ongoing. Isn't that right? The record shows that? Only since Pamela Lee got to the office. So your suggestion is that an employee instigated all these complaints by other employees? Not quite that direct. Joseph Shepard gave Lisa Barnhill outstanding performance evaluations in 2012-2013. That doesn't preclude discrimination. Somebody can be a very good carry-out performance and whatever, carry out the job, but can be terrible to the employees. And so the question here is when does the record show that the complaints started? Our contention is it was around 2013 when Pamela Lee arrived, and Lisa Barnhill and Joseph Shepard were in disagreement about how to evaluate and manage Pamela Lee's performance, and it was out of that... It wasn't just Pamela Lee. It was other employees, too, right? After Joseph Shepard started... Was it other employees, right? There were other employees who complained. Okay, that's my question, right. There were also other employees that praised Lisa Barnhill, and the management review never interviewed them, did not interview the witnesses that Lisa Barnhill put forward to say, you know, this is a unique situation in Little Rock that has been stirred up by Joseph Shepard deviating from the chain of command to undermine my supervision of the office. Wasn't it in 2012, I think it's... Is it Geary or somebody else complained against her to Shepard? Yes. Kelly Geary, I think is her name. So that was before... So it's not just Lee. It's others that were complaining as far back as 2012. Yes, and, you know, in my... I thought you answered my question, and they didn't start until 2013. I stand corrected on that. But even in 2012, Joseph Shepard gave Lisa Barnhill an outstanding performance rating and assigned her to supervise the Justice Office. I understand. That's argumentative. My question is, when did the complaints start? And the outstanding performance doesn't necessarily address whether she discriminated against people. Well, I think this exemplifies how, if you look at only one side of the evidence, it supports one conclusion. But there are... There's a body of evidence here that supports different conclusions, and that's why this case needs to go to a jury. But wasn't she, like, relieved of her supervisory duties in 2014 following some of these complaints? Not in Little Rock. She was in Jacksonville, and she found out about it from a subordinate instead of from Joseph Shepard, which was quite unusual. So I guess my question is, how did... One of the things you have to be able to show is that she was performing satisfactorily in her job performance, and it doesn't seem as if she is. Well, I think the declarations from Louisla Harza and Melissa Nannon undercut that management contention. And they never interviewed these two witnesses in the management review. And if they conduct a one-sided management review, and it leads to the final agency decision in Pamela Lee's case and the discipline against Lisa Barnhill, Staub v. Proctor allows Barnhill to connect a causal chain from the employer's agent acting with discriminatory animus. Okay. I see you're right. Thank you, Mr. Renner. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin